UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JEFFREY WATSON, | ) | |
| 6404 9th Street, N.W. | ) | |
| Washington, D.C. 20012 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1988 (PLF) |
| | ) | |
| JASPER ORMOND, ET AL. | ) | |
| 633 Indiana Avenue, N.W. | ) | |
| Washington, D.C. 20001 | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

DEFENDANTS' MOTION TO DISMISS

Defendants[1] respectfully move, pursuant to Fed. R. Civ. P. 12(b)(1), (2),(5) and (6) to dismiss the Complaint.   In support of this motion, the Court is respectfully referred to the accompanying memorandum of points and authorities.  A proposed Order consistent with this motion is attached.

**Respectfully submitted,**

_____

**KENNETH L. WAINSTEIN, D.C. Bar #451058**
**United States Attorney**

_____

**R. CRAIG  LAWRENCE, D.C. Bar #171538**
**Assistant United States Attorney**

_____

[1]  The individual defendants are Jasper Ormond and Kristine Keels.

_____

**BENTON G. PETERSON, WI. Bar #1029849**
**Assistant United States Attorney**
**Judiciary Center Building**
**555 4th Street, N.W. Β Civil Division**
**Washington, D.C.  20530**
**(202) 514-7238;(202) 514-8780 (Facsimile)**
 **Benton.Peterson@usdoj.gov**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JEFFREY WATSON, | ) | |
| 6404 9th Street, N.W. | ) | |
| Washington, D.C. 20012 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1988 (PLF) |
| | ) | |
| JASPER ORMOND, ET AL. | ) | |
| 633 Indiana Avenue, N.W. | ) | |
| Washington, D.C. 20001 | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
<u>DEFENDANTS'  MOTION TO DISMISS</u>

<u>INTRODUCTION</u>

In this case plaintiff, a former employee of Court Services and Offender Supervision Agency (CSOSA), alleges that he was wrongfully discharged in retaliation for exercising his First Amendment right to speak about an alleged problem occurring in CSOSA's VOTEE program, while in an internal staff meeting.  In particular, plaintiff claims that in the meeting he stated:

 a. "Whoever developed the [VOTEE] program did not know what they were doing."

b. "The [VOTEE] program was not developed with the correct educational

3

perspectives"

c. "The CSO staff are not referring offenders and holding offenders accountable"

d. "The LLS should have the ability to sanction offenders for failure to report to the learning lab." Complaint, ¶12.

Plaintiff alleges that as a result of these comments he was subjected to retaliation when he was terminated. Complaint ¶ 19.

Plaintiff's attempt to turn a routine employment dispute into an action under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) [Bivens], must fail.  No clearly established constitutional rights of plaintiff were violated by the actions he alleges.  Additionally, none of the other claims advanced by plaintiff has any merit.  Plaintiff was a probationary employee who made inappropriate outbursts at a staff meeting.  Consequently, he was terminated.  Defendants clearly were well within their rights in terminating him making inappropriate outbursts at the staff meeting as a probationary employee.

Accordingly, for the reasons advanced below, defendants respectfully submit that their motion to dismiss or, in the alternative, for summary judgment, should be granted.


ARGUMENT

I.      Plaintiff's Constitutional Claims Must Be Dismissed.

4

The Complaint fails to state a claim and certainly does not state one that can withstand the defense of qualified immunity. The Supreme Court held in Bivens that a cause of action exists against federal officials individually for violations of a person's constitutional rights while acting in an official capacity. Plaintiff's claims against the individually sued defendants, however, are barred by defendants' immunity. Federal officials, such as defendants, enjoy a qualified immunity from constitutional and certain statutory torts. Cleavinger v. Saxner, 474 U.S. 193, 206 (1985); Procunier v. Navarette, 434 U.S. 555, 561 (1978). The framework for application of qualified immunity to such claims is set out in Harlow v. Fitzgerald, 457 U.S. 800 (1982). In that case, the Supreme Court confirmed that government officials are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Id. at 818; Behrens v. Pelletier, 116 S. Ct. 834, 838 (1996). Moreover, under Harlow this determination requires an objective, not subjective, analysis. McSurely v. McClellan, 697 F.2d 309, 316 (D.C. Cir. 1982). Harlow thus places squarely on the plaintiff the burden of showing a "prima facie case of defendants' knowledge of impropriety, actual or constructive." Krohn v. United States, 742 F.2d 24, 31-32 (1st Cir. 1984); Davis v. Scherer, 468 U.S. 183, 191 (1984). Furthermore, as the Supreme Court later held,

> Unless the plaintiff's allegations state a claim of
> violation of clearly established law, a defendant

5

> pleading qualified immunity is entitled to dismissal
> before the commencement of discovery.

Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).[2]

The paramount point to keep in mind in analyzing claims such as the plaintiff's, therefore, is that neither the Court nor the plaintiff can engage in an inquiry into the state of mind of defendants in resolving the "threshold" resolution of qualified immunity claims. Harlow, supra, 457 U.S. at 818. Subjective inquiries are legally irrelevant. The only inquiry of any import is whether the defendant's alleged actions violated clearly established law or were objectively reasonable.[3]

As to the "clearly established" inquiry, the defendants need not demonstrate that "the law was established in [their] favor at the time [they] acted." Rather, "[i]t is only necessary for [defendants] to show that the law was unsettled . . . not . . . that a Supreme Court opinion had specifically approved their actions." Zweibon v. Mitchell, 720 F.2d 162, 173-74 n. 19 (D.C. Cir. 1983), cert. denied, 469 U.S. 880 (1984), reh. denied, 469 U.S. 1068 (1984). "[0]nce the trial judge determines the law was not clearly established at the time the contested conduct occurred, the inquiry ceases." Id. at 168 (citing Harlow v. Fitzgerald, supra). Given

---

[2] A defendant's right is to "immunity from suit" not a "defense to liability." Id., see also Cleavinger v. Saxner, supra, 474 U.S. at 207-08.

[3] But see, Siergert v. Gilley 895 F.2d 797, 800-801(D.C. Cir. 1990), aff'd., 500 U.S. 226 (1991). (Inquiry into subjective intent unrelated to knowledge of the law is permissible when conducting a qualified immunity inquiry into a *Bivens* claim where the constitutional violation turns on an unconstitutional motive.). In this case, however, as shown below, plaintiff has failed to allege any constitutional violation, thereby making defendants' motives irrelevant.

<u>Harlow</u>'s focus, it is irrelevant whether the Court concludes that a complaint states a claim upon which relief may be granted, or even that the plaintiff's rights were in fact violated. "The decisive fact is not that a defendant's position turned out to be incorrect, but that the question was open at the time he acted." <u>Mitchell</u> v. <u>Forsyth</u>, 472 U.S. at 535.

Furthermore, as the Supreme Court and the Court of Appeals have explained,

> [t]he contours of the rights [the official is alleged to have violated] must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right.

<u>Anderson</u> v. <u>Creighton</u>, 483 U.S. 635, 639 (1987); <u>Martin</u> v. <u>Malhoyt</u>, 830 F.2d 237, 253, <u>reh</u>. <u>denied</u>, 833 F.2d 1049 (D.C. Cir. 1987). Thus, the Supreme Court held in <u>Anderson</u>, that even though plaintiff's Fourth Amendment rights were violated in that case, the defendant officers were entitled to qualified immunity from suit individually because they acted reasonably.

Here plaintiff has alleged violations of his First Amendment rights. As discussed below, his claim is without merit.

       1.  <u>Plaintiff's First Amendment Claim</u>

             a.     Plaintiff did not make any Statements
                     <u>protected by the First Amendment.</u>

Plaintiff alleges that as a result of comments made as the September 28, 2004 meeting about his concerns regarding the manner in which an internal unit of CSOSA was run, he was retaliated against in violation of the First Amendment.  See Complaint ¶¶ 12, 19.  On the contrary, not only did plaintiff not suffer the alleged retaliation, he has failed to state a First Amendment claim.

In order to demonstrate a violation of the First Amendment, a plaintiff must first demonstrate that he has engaged in speech protected by that amendment. This requires a showing that the speech at issue constitutes a "matter of public concern."

In Connick v. Myers, 461 U.S. 138 (1983), the Supreme Court considered whether the First Amendment rights of an assistant district attorney who objected to a transfer were violated when he was fired after circulating an office questionnaire.  Recognizing that "government offices could not function if every employment decision became a constitutional matter,"  the Supreme Court held that, as a threshold matter, if the questionnaire did not constitute speech on a matter of public concern, the Court did not need to scrutinize the reasons for the discharge. Id., 461 U.S. at 146 (footnote omitted).  The Supreme Court stated that:

> When employee expression cannot be fairly considered as relating to any matter of political, social or other concern to the community, government officials should enjoy wide latitude in managing offices, without intrusive oversight by the judiciary in the name of the First Amendment.

Id. at 146-47.

The Supreme Court then considered whether the employee's speech was a matter of public concern, based on the "content, form, and context of a given statement . . . ." Id. at 147-48.  The Court found that the survey questions concerning the confidence and trust of the attorneys in their superiors, office morale, and the need for a grievance committee were "mere extensions" of the employee's personnel dispute and not of "public concern." Id. at 142.  The Court explained:

> Myers did not seek to inform the public that the District
> Attorney's Office was not discharging its governmental
> responsibilities in the investigation and prosecution of criminal
> cases.  Nor did Myers seek to bring to light actual or potential
> wrongdoing or breach of public trust on the part of Connick and
> others.

Id., 461 U.S. at 142.  The Court rejected the attempt to "constitutionalize an employee grievance." Id. at 154.

Following Connick, the Court of Appeals for this Circuit reached the same result in similar cases.  In Murray v. Gardner, 741 F.2d 434 (D.C. Cir. 1984), an FBI Special Agent alleged that his First Amendment rights were violated when he received a fourteen day suspension following his criticism of a lottery furlough plan.  The plaintiff alleged that the FBI action was designed to deprive him of his First Amendment rights, "both to penalize him for previous lawful expression, and to deter him from making future lawful expression." Id. at 437.

This Court began by noting that the "expressions of personal dissatisfaction by a discontented employee" do not merit protection.  Id., 741 F.2d at

9

438.  Furthermore, the Court found nothing in the plaintiff's remarks that would

"enrich the public's store of appropriate knowledge of the operation of the FBI or

which would in any way relate to matters of general public concern."  Id.  The Court

recognized that the plaintiff's speech was not even "remote[ly] connected to the

matters of public concern envisioned by Connick."  Id.  Further, the Court noted that

"if Connick's rule could be bypassed by [plaintiff's] arguments -- that public monies

and government efficiency are involved -- Connick would stand for nothing."  Id. at

439.

        In Taylor v. FDIC, 132 F.3d 753 (D.C. Cir. 1997), the Court

considered whether an attorney's filing with a court alleging that his supervisors were

improperly litigating a moot case rose to the level of a First Amendment matter of

public concern.  The Court concluded it did not; rather, what was at stake was an

internal dispute between an employee and his supervisors over the handling of a case.

Id. at 769.  Additionally, with respect to a claim brought by another of the plaintiffs,

the Taylor Court stated that protesting action in a meeting called by the superior to

discuss the action cannot fairly be characterized as a disclosure except of the

employee's view of the event.  Id. at 764 n.6.

        Here, plaintiff alleges that he spoke out at an internal CSOSA meeting

to question  whether CSOSA was effectively meeting its federally mandated purpose

by stating:

        a. Whoever developed the program did not know what they were doing.

b.  The program was not developed with the correct educational perspectives

c.  The CSO staff are not referring offenders and holding offenders accountable

d. A The LLS should have the ability to sanction offenders for failure to report to the learning lab.  Complaint, ¶ 12.  The allegations make clear that the controversy lying at the heart of plaintiff's Complaint deals solely with an internal dispute over the manner in which CSOSA's  program is managed, and was discussed at internal meetings between plaintiff and her superiors.  The Complaint contains no factual allegations that this has risen to a level of "public concern," nor does Plaintiff's simple labeling of an internal matter as public turn the matter into one of public concern under the First Amendment.

Consequently because no First Amendment rights are implicated with respect to plaintiff's allegations, no retaliation for First Amendment activity could have occurred, regardless of the type of action taken.

b.  Plaintiff Has Failed to Allege Facts
Showing That he Was Retaliated Against
<u>For First Amendment Activity.</u>

Plaintiff alleges that he was retaliated against by being terminated.

On the contrary, as explained below, the termination does not constitute an act

of retaliation.

1.    <u>Termination</u>

Plaintiff alleges that he was unlawfully discharged in retaliation for the exercise of his First Amendment rights.  On the contrary CSOSA plainly was entitled to terminate him for unprofessional conduct.  This hardly constitutes retaliation.  Indeed, the complaint shows that plaintiff addressed CSOSA officials in a disrespectful and unprofessional manner.  Plaintiff admits that he accused "whoever developed the [VOTEE] program of not knowing what they were doing."  Complaint ¶ 12(a).  This type of conduct at a staff meeting serves no other purpose other than to insult co-workers and supervisors.  As a probationary employee, this provided ample grounds for the CSOSA  to terminate his employment.

The foregoing demonstrates that plaintiff's First Amendment rights were not violated in any fashion.  Accordingly, plaintiff has failed to state a claim or allege facts showing a violation of her clearly established First Amendment rights.

**C.    Special Factors Counsel Against the Creation of a <u>Bivens</u>-Type Remedy Here in View of the Comprehensive, Exclusive Statutory Scheme for Redressing Nondiscriminatory Adverse Personnel Actions Against Federal Employees By the Government Provided Under the Civil Service Reform Act.**

Plaintiff's <u>Bivens</u> action is subject to dismissal under the separate doctrine, established in the <u>Bivens</u> case itself, that special factors counsel against the creation of a <u>Bivens</u>-type remedy where Congress has enacted a comprehensive statutory remedial scheme governing the subject of the claim.   <u>See Bivens</u>, 403 U.S. at, 396-97 (1971) (where there are 'special factors counseling hesitation in the absence of affirmative action by Congress,' the judiciary should decline to exercise its discretion in favor of creating damages remedies against federal officials).  <u>Accord Bush v. Lucas</u>, 462 U.S. 367, 368 (1983) (discussed *infra)*; <u>Chappell v. Wallace</u>, 462 U.S. 296, 304 (1983) (the unique disciplinary structure of the Military Establishment and Congress activity in the field constitute 'special factors' which dictate that it would be inappropriate to provide enlisted military personnel with a <u>Bivens</u>-type remedy against their superior officers);  <u>Schweiker v. Chilicky</u>, 487 U.S. 412 (1988) (declining to provide a <u>Bivens</u> remedy for Social Security disability claimants whose benefits had been withdrawn unconstitutionally in view of the comprehensive and elaborate review and benefit-restoration procedures available to claimants under the Social Security Disability Benefits Reform Act of 1984);  <u>Volk v. Hobson</u>, 866 F.2d 1398, 1402 (Fed. Cir. 1989)(comprehensive statutory scheme governing Bureau of Indian Affairs educators establishing educator's rights and remedies precluded a <u>Bivens</u>-type action against BIA officials for violating her due process rights).

In <u>Bush v. Lucas</u>, the Supreme Court found that the comprehensive

procedural and substantive remedial provisions of the Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 et seq. (codified, as amended, in various sections of 5 U.S.C. (1992)) (the "CSRA") constituted a 'special factor' counseling hesitation against creating a Bivens remedy against federal officials.  462 U.S. at 368, 389-90.  See also  Spagnola v. Mathis, 859 F.2d 223, 230 (D.C. Cir. 1988) (en banc) (" 'special factors' preclude the creation of a Bivens remedy for civil service employees and applicants who advance constitutional challenges to federal personnel actions").  The CSRA is the exclusive remedy for federal employees seeking redress of alleged prohibited personnel practices connected with federal employment.  United States v. Fausto, 484 U.S. 439, 443, 453-54 (1988).  Congress, through passage of the CSRA, provided federal employees with a comprehensive and integrated remedial scheme for addressing violations of rights in the federal employment relationship that supercedes  any independent judicial remedy.  Fausto, 484 U.S. at 448-49.  Courts have uniformly refused to allow "the exhaustive remedial scheme of the CSRA' to be impermissibly frustrated by granting litigants, under the aegis of  [separate statutes] or otherwise, district court review of personnel decisions judicially unreviewable under the CSRA."  Kleiman v. Dept of Energy, 956 F.2d 335, 338 (D.C. Cir. 1992)(citations omitted).[4]

_____

[4]  In Fausto, the Supreme Court emphasized that "the CSRA 'comprehensively overhauled the civil service system,' creating an elaborate 'new framework for evaluating adverse personnel actions against [federal employees.]'"  Id. at 443 (quoting Lindahl v. OPM, 470 U.S. 768, 773 (1985)).  One main purpose behind this overhaul was to "replace the haphazard arrangements for administrative and judicial review of personnel action, part of the 'outdated patchwork of

It is, indeed, the comprehensiveness of the statutory scheme involved, not the adequacy of specific remedies extended thereunder, that counsels judicial abstention in the creation of <u>Bivens</u> remedies. <u>Schweiker v. Chilicky</u>, 487 U.S. at 427-28. In <u>Bush v. Lucas</u>, the Court declined to supplement the employee's statutory remedies with a <u>Bivens</u> action even as it acknowledged that the CSRA=s remedies did not provide complete relief for the plaintiff. <u>Bush</u>, 462 U.S. at 388-89 (relevant question is not one concerning the merits of the remedy sought, but instead, who should decide whether such a damages remedy should be provided[,]; Congress is in a far better position than a court to evaluate the impact of a new species of litigation between federal employees on the efficiency of the civil service). If the comprehensiveness of a statutory scheme cannot be gainsaid, and it appears that congressional inaction in providing for damages remedies has not been inadvertent, courts should defer to Congress judgment with regard to the creation of supplemental <u>Bivens</u> remedies. <u>Spagnola v. Mathis</u>, 859 F.2d at 228-29 (the preclusive effect of <u>Bush</u> extends even to those claimants within the system for whom the CSRA provides no remedy whatsoever)(citations omitted); <u>Volk v. Hobson</u>, 866 F.2d at 1402 ([t]he Court knows, for example, that probationary employees have no remedy whatsoever

---

statutes and rules built up over almost a century' that was the civil service system." <u>Fausto</u>, 484 U.S. at 444 (citation omitted); <u>see also</u> <u>LeBlanc v. United States</u>, 50 F.3d 1025, 1029 (Fed. Cir. 1995)("[t]his framework...essentially preempted the field, superseding the haphazard arrangements of administrative and judicial avenues for appeals of adverse actions to the Civil Service Commission, the district courts, and the Court of Claims").

for adverse personnel actions; courts should abstain completely from inventing other remedies when Congress has set up a complete, integrated statutory scheme).

In view of the comprehensive and exclusive statutory remedies provided under the CSRA, special factors counsel hesitation in the creation of a <u>Bivens</u> remedy in this case.  On that separate basis, the <u>Bivens</u> claim should be dismissed.

### D.    The Court Has No Personal Over Individual Defendant Ormond as Required By Rule 12 (b)(2)

Plaintiff bears the burden of establishing that personal jurisdiction may be exercised over the named individual defendants.  See <u>Naartex Consulting Corp. v. Watt</u>, 722 F.2d 779, 785 (D.C. Cir. 1983);<u>McNutt v. General Motors Acceptance Corporation</u>, 298 U.S. 178, 182 (1936); <u>Tavoulareas v. Comnas</u>, 720 F.2d 192, 195 (D.C. Cir. 1983).  "If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence." <u>McNutt v. General Motors  Acceptance Corp.</u>, 298 U.S. 178, 189 (1936).  Plaintiff cannot provide competent proof that individual defendant Jasper Ormond was properly served.[5]

---

5 The defendants' limited appearance herein in the form of this motion does not constitute acquiescence in the manner of service, a waiver of proper service, or a voluntary entrance of appearance.

In an action against a federal employee in his or her individual capacity, the individually sued defendant must be served with process in accordance with Rule 4(e) of the Federal Rules of Civil Procedure.  Rule 4(e) requires that a copy of a summons and complaint be delivered to the defendant (or his appointed agent) personally, or be left "at his dwelling house or usual place of abode with some person of suitable age and discretion" who resides there.  Service on the U.S. Attorney in the district where the action was brought pursuant to Fed. R. Civ. P. 4(i) "does not obviate the requirement of personal service under Fed. R. Civ. P. 4(d)(1) where the action is in substance against a federal official in his individual capacity."  See Lawrence v. Acree, 79 F.R.D. 669, 670 (D. D.C. 1978).  Similarly, service at a place of business does not satisfy the service rule. Ormond was not personally served pursuant to Fed. R. Civ. P. 4(e).  Actual notice will not, of course, substitute for technically proper service under Rule 4 and will not permit the Court to render a personal judgment against an individually-named defendant.  Sieg v. Karnes, 693 F.2d 803 (8th Cir. 1982); see also Stafford v. Briggs, 444 U.S. 527 (1980).  The service of process thus being defective as to defendant Ormond in his individual capacity, this action cannot proceed against him personally.  Micklaus v. Carlson, 632 F.2d 227, 240 (3rd Cir. 1980); Griffith v. Nixon, 518 F.2d 1195, 1196 (2d Cir. 1985), cert. denied, 423 U.S. 995 (1975).

Although a plaintiff faced with defective service issues normally should be provided the opportunity to cure such problems, such opportunity would be futile

here, as the individual defendants are entitled to qualified immunity.  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982).   Once the individual defendants raise qualified immunity, courts must resolve two issues: 1) whether a constitutional right would have been violated on the facts alleged; and, assuming the violation is established (from the pleadings), 2) whether the right alleged to have been violated was clearly established.  <u>Saucier v. Katz</u>, 533 U.S. 194 (2001).  In determining whether a right is clearly established, the relevant, dispositive inquiry is whether it would be clear to a ***reasonable*** official that his conduct was unlawful in the situation he confronted.  <u>Id.</u> at 199.  <u>See</u> <u>also</u>, <u>Wilson v. Layne</u>, 526 U.S. 603, 615 (1999).  Finally, where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive.  <u>Saucier</u>, 533 U.S. at 200.

    The facts alleged fail to establish that a constitutional right would have been violated by these defendants.  The complaint does not adequately allege a violation of the plaintiff's constitutional rights.  Furthermore, even assuming *arguendo* that the complaint could be interpreted to sufficiently state a constitutional right, plaintiff has failed to articulate that the alleged constitutional right was "clearly established." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).

<u>CONCLUSION</u>

        For the foregoing reasons, plaintiff's claims against the defendants should be dismissed.

Respectfully submitted,

#451058

_____

**KENNETH L. WAINSTEIN, D.C. Bar**

**United States Attorney**

_____

**R. CRAIG  LAWRENCE, D.C. Bar #171538**
**Assistant United States Attorney**

_____

**BENTON G. PETERSON, WI. Bar #1029849**
**Assistant United States Attorney**
**Judiciary Center Building**
**555 4th Street, N.W.  Civil Division**
**Washington, D.C.  20530**
**(202) 514-7238;(202) 514-8780 (Facsimile)**
**Benton.Peterson@usdoj.gov**